UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| **DIEDRE WARD,** | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 1:15-cv-00225-NCC ) |
| **NANCY A. BERRYHILL,**[1] **Acting Commissioner of Social Security,** | ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying the application of Diedre Ward ("Plaintiff") for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq*. Plaintiff has filed a brief in support of the Complaint (Doc. No. 13), and Defendant has filed a brief in support of the Answer (Doc. No. 18). The Parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c) (Doc. No. 8).

### I. PROCEDURAL HISTORY

Plaintiff filed her application for SSI on July 11, 2013 (Tr. 153-58). Plaintiff was initially denied on August 21, 2013, and she filed a Request for Hearing before an Administrative Law Judge ("ALJ") (Tr. 96-101, 103-08). After a hearing, by decision dated September 9, 2014, the ALJ found Plaintiff not disabled (Tr. 12-23). On October 21, 2015, the Appeals Council denied

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Plaintiff's request for review (Tr. 1-6). As such, the ALJ's decision stands as the final decision of the Commissioner.

## II. DECISION OF THE ALJ

The ALJ determined that Plaintiff has not engaged in substantial gainful activity since July 11, 2013, the application date (Tr. 17). The ALJ found Plaintiff has the severe impairments of obesity, osteoarthritis of both knees, history of pulmonary embolism, a mood disorder, and a personality disorder but that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 17-18).

After considering the entire record, the ALJ determined Plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b) with the following limitations (Tr. 19). She is able to stand for 4 hours in an 8-hour workday (*Id.*). She should avoid excessive exposure to temperature extremes, humidity, strong odors, fumes, dust, chemicals, or other pulmonary irritants (*Id.*). Due to her mental impairment, she is limited to jobs that involve only simple, repetitive tasks, and require no more than occasional contact with the public and co-workers (*Id.*). The ALJ found Plaintiff has no past relevant work, but that there are jobs that exist in significant numbers in the national economy that she can perform, including assembler, ejection molder, and bench assembler (Tr. 22-23). Thus, the ALJ concluded that a finding of "not disabled" was appropriate (Tr. 23). Plaintiff appeals, arguing a lack of substantial evidence to support the Commissioner's decision.

## III. LEGAL STANDARD

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "'If a claimant fails

to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'" *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities. . . ." *Id.* "'The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work.'" *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001), citing *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. *Id.*

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to establish his or her RFC. *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. *Steed*, 524 F.3d at 874 n.3. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Young v. Apfel,* 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). *See also Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."). Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence. *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). *See also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. *Cox*, 495 F.3d at 617. Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001) (citing *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). Thus, an administrative decision which is supported by substantial evidence is not subject to

reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. *Krogmeier*, 294 F.3d at 1022.

To determine whether the Commissioner's final decision is supported by substantial evidence, the court is required to review the administrative record as a whole and to consider:

(1) Findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

*Brand v. Sec'y of Dep't of Health, Educ. & Welfare*, 623 F.2d 523, 527 (8th Cir. 1980).

### IV. DISCUSSION

In her appeal of the Commissioner's decision, Plaintiff asserts that the ALJ failed to properly weigh the opinion of her treating physician, Dr. Courtney Johnson ("Dr. Johnson"),[2] in accord with SSR 96-2p because the ALJ failed to give good reasons for giving little weight to the well-supported opinion of Dr. Johnson (Doc. No. 13 at 10). For the following reasons, the Court finds that Plaintiff's argument is without merit, and that the ALJ's decision is based on substantial evidence and is consistent with the Regulations and case law.

In a Mental Medical Source Statement dated July 7, 2014, Dr. Johnson listed Plaintiff's mental diagnoses as mood disorder not otherwise specified, alcohol dependence in remission,

---

[2] The Parties do not dispute that Dr. Johnson is Plaintiff's treating physician (*See* Doc. No. 13 at 10 and Doc. No. 18 at 11).

5

cocaine dependence in remission, and borderline personality disorder (Tr. 282). Dr. Johnson indicated that Plaintiff's conditions would cause her to have 3 bad days per month resulting in the need to leave work prematurely or to be absent (Tr. 282) and noted that Plaintiff would be "off task" 10% of the time (*Id.*). Dr. Johnson also indicated that Plaintiff experiences drowsiness as a side effect to her medication (*Id.*). Dr. Johnson opined that Plaintiff had markedly limited restriction in the following abilities: to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; to work in coordination with or proximity to others without being distracted by them; to complete a normal workday and workweek without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and to respond appropriately to changes in the work setting (Tr. 281). Dr. Johnson further opined other moderate limitations to Plaintiff's abilities in the areas of understanding and memory; sustained concentration and persistence; social interaction; and adaptation (Tr. 281-82).

"A treating physician's opinion regarding an applicant's impairment will be granted controlling weight, provided the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." *Reece v. Colvin*, 834 F.3d 904, 908-09 (8th Cir. 2016) (internal quotations omitted). "Although a treating physician's opinion is usually entitled to great weight, it 'do[es] not automatically control, since the record must be evaluated as a whole.' " *Id.* (quoting *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)). "A treating physician's own inconsistency may undermine his opinion and diminish or eliminate the weight given his opinions." *Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015) (internal quotation marks omitted). "Whether the ALJ

6

gives the opinion of a treating physician great or little weight, the ALJ must give good reasons for doing so." *Prosch*, 201 F.3d at 1013 (citing 20 C.F.R. § 404.1527(d)(2)).

The court finds that the ALJ gave proper weight to the opinion of Dr. Johnson. The ALJ afforded Dr. Johnson's opinion "no weight," finding Dr. Johnson's opinion "in stark contradiction to [Plaintiff's] description of her symptoms and the doctor's observations of her mental status" (Tr. 22). Specifically, the ALJ found "[s]ometimes [Plaintiff] reported having symptoms, but many times, she reported her mood was stable and her medication worked well" (Tr. 21). Indeed, as reflected Dr. Johnson's treatment records, Plaintiff's mood "was mostly stable" and her medication dosing was rarely modified (Tr. 283, 285, 287, 289). Similarly, Mr. Robert Dansby, F.N.P. frequently observed a normal mental status (Tr. 250, 254, 257, 260, 262, 264, 307, 310). Further, Dr. Johnson consistently assessed Plaintiff with Global assessment of functioning ("GAF") scores ranging from 50 to 60[3] and, while these scores indicate moderate limitations in functioning, they do not support the severity of limitation as suggested by Dr. Johnson in her opinion (*See, e.g.,* Tr. 283 (51-60), 286 (50-59), 288 (50-59)).

---

[3] Global assessment of functioning ("GAF") is the clinician's judgment of the individual's overall level of functioning, not including impairments due to physical or environmental limitations. *See Diagnostic and Statistical Manual of Mental Disorders, DSM-IV*, 32-34 (4th ed. rev. 2000). Expressed in terms of degree of severity of symptoms or functional impairment, GAF scores of 31 to 40 represent "some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood," 41 to 50 represents "serious," scores of 51 to 60 represent "moderate," scores of 61 to 70 represent "mild," and scores of 90 or higher represent absent or minimal symptoms of impairment. *Id.* at 32. *See also Brown v. Astrue*, 611 F.3d 941, 955 (8th Cir. 2010) ("[A] GAF score of 65 [or 70] . . . reflects 'some mild symptoms (e.g. depressed mood or mild insomnia) OR some difficulty in social, occupational, or school functioning . . . but generally functioning pretty well, has some meaningful interpersonal relationships.'") (quoting *Kohler v. Astrue*, 546 F.3d 260, 263 (2d Cir. 2008) (quoting *Diagnostic and Statistical Manual of Mental Disorders* 34 (4th ed. rev. 2000) (alterations in original). *See also Goff*, 421 F.3d at 789, 791, 793 (affirming where court held GAF of 58 was inconsistent with doctor's opinion that claimant suffered from extreme limitations; GAF scores of 51-60 supported ALJ's limitation to simple, routine, repetitive work).

In addition to the medical record as a whole, the ALJ reviewed the other mental health opinion evidence of record.[4] To the extent that Plaintiff asserts that the ALJ's analysis is flawed by his reliance on other opinions of record, it is the ALJ's function to resolve conflicts among differing medical opinions. *See Wagner v. Astrue,* 499 F.3d 842, 848 (8th Cir. 2007). In this case, the ALJ gave the opinions of Dr. Joan Singer, Ph.D. ("Dr. Singer"), a state agency psychological consultant, and Mr. Robert Dansby, F.N.P. ("Mr. Dansby"), Plaintiff's primary treating medical provider, "significant weight," finding the opinions "generally consistent with the symptoms observed by the claimant's healthcare providers" (Tr. 21-22). Dr. Singer completed a case analysis on August 21, 2013 (Tr. 82-89). In her Mental Residual Functional Capacity Assessment, Dr. Singer opined Plaintiff has understanding and memory limitations, specifically finding that Plaintiff is moderately limited in her ability to understand and remember detailed instructions (Tr. 86). She also found the Plaintiff to be moderately limited in her ability to carry out detailed instructions; the ability to maintain attention and concentration for extended periods; the ability to work in coordination with or in proximity to others without being distracted by them; and the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods (Tr. 86-87). Dr. Singer further opined that Plaintiff is moderately limited in her ability to respond appropriately to changes in the work setting (Tr. 87).

The Court finds that the ALJ properly considered the opinion of Dr. Singer. As a state agency psychological consultant, Dr. Singer is a highly qualified expert in Social Security disability evaluation. 20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i); *Kamann v. Colvin*, 721

---

[4] Plaintiff's argument solely addresses Plaintiff's mental health impairments, as such the court will only address the mental health opinions of record.

F3d 945, 951 (8th Cir. 2013) (State agency psychologist's opinion supported ALJ's finding that claimant could work despite his mental impairments); *Casey v. Astrue*, 503 F.3d 687, 694 (8th Cir. 2007) (finding the ALJ did not err in considering State agency psychologist's opinion along with the medical evidence as a whole). Although Plaintiff asserts that Dr. Singer's opinion is entitled to less weight because she issued her opinion "well before the vast majority of [Plaintiff's] psychiatric treatment notes were rendered and also before Dr. Johnson's opinion was issued," "Plaintiff does not provide, and the Court is not aware of, any legal authority which holds a consultant's medical opinion must be based on subsequently created medical records, or that the consultant's opinion must necessarily be discounted because it is not based on those records." *Barker v. Colvin*, No. 14-0900-CV-W-ODS-SSA, 2015 WL 4928556, at *1 (W.D. Mo. Aug. 18, 2015). Indeed, such a timeline is not uncommon in the context of review as claimants will update their medical records and other evidence of record throughout the course of the pendency of their claim and the medical or psychological consultant will necessarily review the file as it is at a certain point in time. As discussed previously, despite Dr. Singer's narrative brevity, the ALJ's RFC determination is further bolstered by the medical evidence of record which is consistent with Dr. Singer's opinion.

The ALJ also relied on the Mental Capacity Assessment completed by Mr. Dansby on August 2, 2013 (Tr. 273-75). In his Mental Capacity Assessment, Mr. Dansby opined a moderate[5] degree of limitation in only one area—Plaintiff's ability to carry out detailed instructions (Tr. 273). Mr. Dansby also noted a slight[6] degree of limitation in the following

---

[5] As defined by the form, a moderate degree limitation indicates that, "The individual will have intermittent difficulty performing in this area. The individual can generally perform satisfactorily in this area but not always" (Tr. 273).

[6] A slight degree of limitation suggests, "There is some mild limitation in this area, but the individual can generally function satisfactorily" (*Id.*).

9

abilities: to understand and remember very short and simple instructions; to maintain attention and concentration for <u>extended</u> periods; to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; to sustain an ordinary routine without special supervision; to complete a <u>normal workday</u> without interruptions from psychologically based symptoms; to perform at a consistent pace with a standard number and length of rest periods; to interact appropriately with the general public; to respond appropriately to changes in the work setting; and to set realistic goals or make plans independently of others (Tr. 273-75) (emphasis in original). Mr. Dansby further opined that Plaintiff would miss one day of work in an average month (Tr. 274).

The Court also finds that the ALJ properly considered the opinion of Mr. Dansby. As a preliminary matter, Plaintiff appears to assert that the ALJ considered Mr. Dansby as a treating source but, as a nurse practitioner, Mr. Dansby is not an acceptable medical source (*See* Doc. No. 13 at 12-13). While the ALJ indicates that Mr. Dansby was the Plaintiff's primary care provider, he also explicitly notes that Mr. Dansby is not an acceptable medical source (Tr. 20). Although information from an "other source" opinion, such as Mr. Dansby's, cannot establish the existence of a medically determinable impairment, an ALJ may consider "other source" opinions. SSR 06–03p, 2006 WL 2329939, at *6 (Aug. 9, 2006). "Regarding evidence from [other] sources, the ALJ should consider such factors as the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence." *Igo v. Colvin*, 839 F.3d 724, 731 (8th Cir. 2016) (internal citations omitted). In this case, the ALJ appropriately indicated that Mr. Dansby, although a nurse practitioner, was the Plaintiff's primary care provider, specifically noting that he had a treatment relationship with the Plaintiff and that his assessment of her level of functioning was supported by the objective

medical evidence and consistent with his own observations. (Tr. 20-21). Indeed, as previously detailed, Dr. Johnson reported that Plaintiff's mood was mostly stable (Tr. 283, 285, 287, 289). Dr. Johnson further indicated that Plaintiff was responding well to medication, rarely modifying the dose (*Id.*) and Mr. Dansby consistently observed a normal mental status (Tr. 250, 254, 257, 260, 262, 264, 307, 310).

Finally, the ALJ properly incorporated the Plaintiff's credible mental impairment limitations in his determination of Plaintiff's RFC. As indicated above, the ALJ found Plaintiff to have the severe mental impairments of a mood disorder and a personality disorder (Tr. 17). In his RFC determination, the ALJ specified, "[d]ue to her mental impairments [Plaintiff] is limited to jobs that involve only simple, repetitive tasks, and requires no more than occasional contact with [the] public and co-workers" (Tr. 19). These significant limitations indicate that the ALJ gave some credit to the mental health opinions of record, where supported by objective medical evidence. *See Choate v. Barnhart*, 457 F.3d 865, 870 (8th Cir. 2006).

Accordingly, the ALJ properly offered a sufficient basis to give Dr. Johnson's opinion "non-*substantial* weight" in addition to "[non-]*controlling* weight." *See Papesh v. Colvin,* 786 F.3d 1126, 1132 (8th Cir. 2015) (emphasis in original) (internal citations omitted) (finding error when the ALJ offered no basis to give an opinion non-substantial weight; "For example, the ALJ did not find the opinion inconsistent with the record or another [of the physician's own] opinion[s]."). Although the ALJ did not address all of the non-controlling factors found in 20 C.F.R. §§ 404.1527(c), 416.927(c), [7] the ALJ is not required to cite specifically to the regulations but need only clarify whether he discounted the opinion and why. *Kientzy v. Colvin*,

---

[7] If a treating physician's opinion is not given controlling weight, the amount of weight given to it "is to be governed by a number of factors [contained in 20 C.F.R. § 416.927(c) (applying to claims for DIB) or 20 C.F.R. 416.3927(c) (applying to claims for SSI)] including the examining relationship, the treatment relationship, consistency, specialization, and other factors." *Shontos v. Barnhart*, 328 F.3d 418, 426 (8th Cir. 2003).

11

No. 4:15 CV 707 JMB, 2016 WL 4011322, at *8 (E.D. Mo. July 27, 2016) (citing *Grable v. Colvin*, 770 F.3d 1196, 1201-02 (8th Cir. 2014)).  In this case, the ALJ explained his reasons for giving Dr. Johnson's opinion "no weight" as inconsistencies between Plaintiff's description of her symptoms and Dr. Johnson's own records.  The ALJ also considered the medical record as a whole and the other relevant mental health opinions of record, properly incorporating Plaintiff's credible limitations into his determination of her RFC.

## V. CONCLUSION

For the reasons set forth above, the court finds that substantial evidence on the record as a whole supports the Commissioner's decision that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED with prejudice**.

A separate judgment shall be entered incorporating this Memorandum and Order. Dated this 6th day of February, 2017.

  /s/ Noelle C. Collins
NOELLE C. COLLINS
UNITED STATES MAGISTRATE JUDGE